## JOHNSON *vs.* REESE.

The provisions of the Judiciary Act of 1799, making it the duty of a Sheriff to advertise his sale of property seized under execution, in three of the most public places in the county, has not been repealed by subsequent legislation, but is still of force, and if he neglects to perform this duty, and injury results therefrom, he is liable therefor, to the extent of the damages sustained. .

Trespass on the case, in Glascock Superior Court. Decision on Demurrer to plaintiff's declaration, made by Judge THOMAS W. THOMAS, at the August Term, 1860.

Asa Johnson instituted his action in Glascock Superior Court against Augustus C. Reese, alleging: That on the 1st day of January, 1858, in said county, he was lawfully seized, as of his own right, of a tract of land containing 200 acres, more or less, adjoining lands of Thomas Dickerson, Jerusha Kent, and others; that the defendant, under color of the office of sheriff of said county, did seize and sell the same without lawful authority, to the damage of the plaintiff one thousand dollars; that the defendant put up and sold said land to the highest bidder, without leaving notice with the

ADVERTISEMENT OF SHERIFF'S SALE. "In Brooks *v.* Rooney, 11 Georgia, 423, it was ruled, that a purchaser at a sheriff's sale depends upon the judgment, the levy and the deed; all other questions are between the parties to the judgment and the officer;' it being sufficient for the purchaser that the sheriff had obtained authority to sell and had executed to him a title. It was further ruled in that case, that an act which made it the duty of the sheriff to advertise the sale of property in a particular way, and to sell between certain hours of the day, was merely directory to the officer; the effect of his neglect being

plaintiff of the levy thereon; and did sell said land before the courthouse door, on the first Tuesday in July, 1858, without advertising said sale, according to law in such case, made and provided; that no notice of said sale was given, in the said county of Glascock; that when and after said land was exposed to sale, the same was knocked off to one Edward A. Brinkley, against the protest of the plaintiff, for four hundred dollars, when it was really worth one thousand dollars, and would have sold for said sum of one thousand dollars, if legal notice of said sale had been given; that after said sale, and pursuant thereto, the defendant did turn the plaintiff, with his family, out of the possession of said land, and placed the said Brinkley in possession of the same, together with the crop on the land which had been planted and cultivated by the plaintiff, and which was worth the sum of five hundred dollars; by means of all which, the plaintiff and his family were deprived of a home, and were exposed to the inclemency of the weather, and by which the plaintiff was damaged one thousand dollars.

To this declaration the defendant filed a demurrer, on the grounds—

1st. Because the declaration contains no cause of action.

2d. Because the declaration does not allege any cause of action, or show that the plaintiff suffered any damage or injury prior to the commencement of his said suit.

3d. Because it was not necessary to the legality or validity of the sale of the land, that notice of the levy should have been given to the plaintiff, or that notice of the sale should have been given at three of the most public places in the county of Glascock, and that the sale of the land was valid.

After argument had thereon, the presiding judge sustained the demurrer, and dismissed the plaintiff's action, and it is to reverse that decision, that the writ of error in this case is prosecuted.

E. H. Pottle, for the plaintiff in error.

Wasden & Nelms, for the defendant in error.

*By the Court.*—Lyon, J., delivering the opinion.

The defendant, as sheriff of the county of Glascock,

to subject him to a suit for damages at the instance of the party injured, but not to affect the title of the purchaser, unless there was collusion between him and the sheriff. Also that **a purchaser at a sheriff's sale has a right to presume that a public officer known to possess the power to sell, has taken every previous step required of him by the law under which he sells.** To the same effect are the follow-

seized and sold a tract of land, as the property of the plaintiff, under execution, but failed to advertise the sale in three of the most public places in the county, as required by the Judiciary Act of 1799. (*Cobb's Dig.* 509.) This action was brought by the plaintiff, against the defendant, to recover damages sustained by means of such neglect of duty. On the hearing, the Court below awarded a nonsuit, to which plaintiff excepted. And the only question for our consideration is, whether the provision of the Act of 1799, referred to above, has been repealed by subsequent legislation, either expressly or by implication? If it has, then the judgment of nonsuit was properly awarded; if not, the judgment was erroneous.

It is conceded that the identical question made in this case, was fully discussed, and actually decided, by this Court in *Johnson vs. Reese* (same parties, though a different case), 28 *Ga.* 355; but it is urged by counsel that, while this is true, the question made here now was not really in that case, or rather the judgment of the Court there did not at all depend on this question. And we agree with the counsel, that the real question in that case—which was, whether the purchaser, at the sale, got a title to the land or not—had nothing to do with the adjudication of the one before us now, and the adjudication of this, at that time, was unnecessary, and really not before the Court. Hence, we do not fell concluded by it, but shall decide the question precisely as if it was made now for the first time.

The provision of the Act of 1799, on which this action is founded, is in the following words:

"No sales in future shall be made by the sheriff of property taken under execution, but on the first Tuesday in each month, and between the hours of ten and three in the day; and it shall be the duty of the sheriff to give thirty days' notice in one of the public gazettes of the State of all sales of land and other property executed by him, and also advertise the same in three of the most public places in the county where such sales are to be made, and shall give a full and complete description of the property to be sold," etc.

The Act of 1839 (*Cobb,* 286) requires the sheriff and other officers to keep in their respective offices a regular file of the newspaper in which they may advertise the notices required by law to be advertised, but no change of advertising is made.

ing: Hendrick *v.* Davis, 27 Ga. 167; Johnson *v.* Reese, 28 Ga. 353. See also, in this connection, Johnson *v.* Reese, 31 Ga. 601; Solomon *v.* Peters, 37 Ga. 251; Wallace *v.* Trustees, 52 Ga. 167; Jeffries *v.* Bartlett, 75 Ga. 230." Conley *v.* Redwine, 109 Ga. 644-5.

**PREAMBLE OF ACT.** "While the **preamble is not,** strictly speaking, **any part of the Act** itself, **yet** where the body of an Act is ambig-

The next Act on the subject to which we are referred, is an Act, entitled, "An Act to authorize and require the sheriff, etc., to advertise in certain newspapers." Approved February 22, 1850, by which it is enacted:

"That the sheriffs, etc., are hereby authorized and required to advertise their sales, etc., in some newspaper published in their counties respectively; and if there be no such paper published in the county, then in the nearest newspaper having the largest, or a general circulation in the county."

By the Act of 1799, the sheriff was required to give thirty days' notice in some public gazette of the State. The sheriff, by that Act, could have complied with the law by a publication of his sales in any newspaper of the State, whether a single copy was taken in the county or not. The object of the advertisement was to give publicity to the sale, so that the competition might be as large as possible, they benefiting both the debtor and creditor in the sale of the property. The provision of the Act of 1799 did not accomplish that object, or at least it might be complied with by the sheriff, and the object of the law not attained. The Act of 1850 was intended to remedy that defect, and the only change made by that Act was as to the newspaper in which the notice was to be given, all the other provisions of the Act remaining of force.

The next Act on this subject, and the one which is relied on by counsel for defendant, as repealing, by implication, the provisions of the Act of 1799, requiring advertisements at the three most public places in the county, is that of 1852, entitled, *"An Act to regulate the advertising of Clerks, Sheriffs and other State and county officers,"* etc. Approved January 22, 1852.

Section 1 enacts: "That from and after the passage of this Act, the clerks, sheriffs and other State and county officers of the State of Georgia shall be authorized and empowered to publish their advertisements in any newspaper they may select, having a general circulation in their respective counties or districts."

Section 2, general repealing clause.

The only effect of this Act was, to repeal the provision of the Act of 1850, that required the advertisements to be made in a newspaper published in the county where the sale was to be made, or in the nearest having the largest, or gen-

uous or uncertain, **resort may be had to its preamble for the purpose of ascertaining the legislative intent.** Eastman *v.* McAlpin, 1 Ga. 157; Price *v.* Bradford, 5 Ga. 370; Johnson *v.* Reese, 31 Ga. 605." Smith *v.* Evans, 125 Ga. 112.

eral circulation in the county, and instead thereof, to author-ize the officers to advertise in any paper they might select, restricting them only to some paper that had a general circu-lation in the county where the sales were to be made.    The Act did not repeal the provisions of the Act of 1799, requir-ing the sale to be advertised at three of the most public places in the county, nor in anywise dispense with or abrogate that duty on the part of the sheriff, nor are those provisions in conflict or inconsistent with the terms of the Act of 1852; but they are in as full force and as binding on the sheriff, as a duty, as if no such Act had been passed.

Great stress was laid, in the argument, on the fact, that the title of the Act of 1852 is, *"to regulate the adver-tising of clerks and sheriffs,"* from which, as argued, appears the intention of the Legislature as to the whole duty of those officers in advertisements; that in regulating the adver-tisement, they then prescribe all the duties required of the officer in this respect; in other words, as the Legislature, by that Act, regulated the duty of sheriffs, in advertising their sales, a compliance with the provisions of that Act is a full performance of their whole duty in that respect; and all Acts requiring other or additional duties, conflict with that Act, and are void.

The answer to the argument is, that the title is no part of the Act, and resort can be had to it only for the purpose of ascertaining the intention of the Legislature where the body of the Act itself is so obscure and uncertain that the inten-tion can not be ascertained from it.    In the body of this Act there is no obscurity or ambiguity whatever, but the sense is plain and manifest, that the only change made or intended upon the old law, was as to the newspaper in which the no-tice of the sale was to be made.    But let us look at the word as though it constituted a part of the body of the Act, and is to be considered as well as all the balance of the Act, to get at the sense of the Legislature.    Was it used in the broad sense claimed for it by counsel for the defendant? Most certainly not; for that would be to dispense with the length of time the advertisement was to run, prior to the sale, the description of the property to be sold, and the names of the parties to the proceeding; all of which are prescribed by the Act of 1799, and are to be found nowhere else.    It surely could not be contended that the Legislature intended that

these important requirements should be dispensed with, or that a sheriff had discharged his duty who had neglected them in the sale of a defendant's property; yet, if we should hold that this statute repealed the one thing, we should, by the same rule, and for the same reason, be compelled to hold that it also repealed the other requirements; for the Act is "to regulate the advertising," and if it regulates as to one thing other than that expressly named in the Act, it must as to all things. We can not so hold. On the contrary, we must construe that word in the confined sense in which the Legislature manifestly intended it, as applied only to the newspaper in which the notice should be given, leaving all other regulations as to the sheriff's duty in advertising of force, and undisturbed thereby.

I will briefly notice some of the other arguments used by the ingenious counsel for the defence: These are, that this provision of the Act of 1799 has become obsolete—is disused throughout the State; that the reason and necessity for their enactment has long ceased to exist, because at the time of that enactment there were but few papers published in the State of Georgia, and they had but a very limited circulation; that, then, if the notice was given only in a public gazette, very little, if any, publicity would be given of the sale to those who would likely desire to become purchasers; hence, the necessity of requiring notices to be posted at public places in the county. To all this we reply, that an Act of the Legislature never becomes obsolete, but is always in full force and vigor until repealed by the Legislature; that the willful and deliberate neglect by an officer, or officers, of a plain and positive duty, under a statute, can never justify the above, no matter how long-continued or how universal such neglect may be. Whether the reason and necessity of the law has ceased, involves the whole question in this case. The statute makes it the duty of the sheriff to give the notices. The object is, to give publicity to the sale, so that the defendant's property shall not be sacrificed for the want of a knowledge of the sale by persons who would likely become purchasers or competitors therefor, in the sale. If all such persons have, or had notice of the sale, although it was not posted at the three most public places in the county, then the plaintiff has sustained no injury; but that is a question to be determined by the jury on the proof made. The con-

tinuance of a statute does not depend on the continuance, or even the existence, of a reason. The reason may cease, or it may never have existed; the officer of that law is bound, nevertheless, to obey its commands; and if he fails to do so, and injury results, he must respond to the extent of the injury sustained. For these reasons, we think the demurrer ought not to have been sustained.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in sustaining the demurrer to the plaintiff's declaration and dismissing his said suit.