21893.   CITY OF ATLANTA et al. v. COLUMBIA PICTURES CORPORATION.
21894.   CITY OF ATLANTA et al. v. TWENTIETH CENTURY-FOX FILM CORPORATION et al.

ARGUED JANUARY 16, 1963—DECIDED FEBRUARY 25, 1963—REHEARING DENIED MARCH 12, 1963.

*J. C. Savage, Edwin L. Sterne, Robert F. Lyle,* for plaintiffs in error.

*Robert S. Sams, Tench C. Coxe,* contra.

GRICE, Justice. Does this municipal corporation, under its charter powers, have authority to provide by ordinance that before any motion picture may be exhibited in the city, it must be submitted for classification and if classified in either of two specified categories the advertising shall mention such classification?

That issue arises from the filing of identical petitions in the Superior Court of Fulton County, Georgia, by Columbia Pictures Corporation and by Twentieth Century-Fox Film Corporation and other similar corporations, seeking to enjoin the enforcement of such an ordinance on the grounds that the city did not have power under its charter to enact it and also that the ordinance violated stated provisions of the Georgia and United States Constitutions. The petitions named as defendants the City of Atlanta, Christine S. Gilliam in her capacity as Motion Picture Reviewer of that city, and certain named persons in their capacities as the Board of Review.

The two cases were treated together in the trial court. Ruling that the city did not have authority under its charter to enact the ordinance and specifically *not* ruling on the constitutional attacks made on the ordinance, the trial court overruled the defendants' general demurrers to the petition and granted an interlocutory injunction restraining the city from attempting to enforce the ordinance.

The pertinent provisions of the ordinance under attack are these:

Section 1 created the office and described the duties of Motion Picture Reviewer, those duties being to "review and rate motion pictures to be shown in the City of Atlanta for the information, benefit and guidance of the public as herein set out."

Sections 2 and 3 provided: "2. Any motion picture before being shown in the City of Atlanta must first be screened by the Motion Picture Reviewer and rated as herein set out.

"3. Motion pictures to be shown in the City of Atlanta shall be rated by the Motion Picture Reviewer in one of the following classifications: A. *Approved* . . . B. *Unsuitable for the*

*Young* . . . C. *Objectionable* . . . [the standards for each classification being set out]."

Sections 4 and 5 named the Library Board of the city as a Board of Review to hear appeals from the rating of the Reviewer, gave it subpoena powers and provided for appeal to such board.

Section 6 stated: "6. It shall be unlawful to show a motion picture in the City of Atlanta without first having it screened and rated by the Motion Picture Reviewer, as herein set out . . . [some exceptions being stated, including private showings and certain scientific and educational ones]."

Section 7 provided that the advertising of motion pictures classified as "Unsuitable for the Youth" or "Objectionable" must show a statement to that effect.

Section 9 imposed a fine of not more than $500 or imprisonment for not more than thirty days, or both, for each offense in violation of the ordinance.

An extended recital of the allegations made in the petition is not necessary under our view of the case. This is so since petitioners bring the suit as taxpayers as well as distributors of motion pictures, and also since the constitutional questions can not be considered on this review as they were not ruled upon by the trial court.

Petitioners allege that this court in the recent case of *K. Gordon Murray Productions, Inc. v. Floyd*, 217 Ga. 784 (125 SE2d 207), declared unconstitutional the only provision of the city's charter dealing with regulation of motion pictures (Ga. L. 1915, pp. 480, 493-494, § 23) and that there is no other provision of the city's charter or general law which authorizes the enactment of such ordinance.

Petitioners also allege that they have no adequate remedy at law, and unless the defendants are restrained from enforcing the ordinance they will incur irreparable damage in specified respects, including incurrence of the expense of the defendant Reviewer's salary and other items related to enforcement of the ordinance.

The petitioners' prayers included a declaration that the ordinance is invalid and the grant of temporary and permanent in-

junctive relief against enforcement of such invalid ordinance and disbursement of tax money for the Reviewer's salary and other payments connected with it.

To those petitions the defendants filed demurrers and an answer which, among other things, admitted the facts as to the provisions, passage and steps to enforce the ordinance, but asserted its validity.

Upon the overruling of the defendants' general demurrers, the admission of certain evidence over their objection, and the grant of the temporary injunction, the defendants assigned those rulings as error.

■ ■ First, we must determine whether petitioners alleged standing and that they have suffered or are in immediate danger of suffering irreparable injury and, therefore, a right to seek the relief prayed for.

We agree with the trial court that the petitioners, as taxpayers of the defendant city, have shown both of these elements.

They have an interest in the sum made up from taxes in the city, and public funds are necessarily expended under the ordinance for its enforcement. See *Aiken v. Armistead*, 186 Ga. 368, 383 (198 SE 237); *Barge v. Camp*, 209 Ga. 38, 43 (70 SE2d 360).

■ Next, we hold that petitioners alleged that they have no adequate remedy at law. The Motion Picture Reviewer and the Board of Review, under the ordinance, were established only to classify motion pictures and have no power to determine whether the ordinance is authorized by the city's charter.

■ We come now to the substantial question for this review, whether the ordinance is subject to the attack that it is ultra vires as beyond the charter powers of the city. In reaching its decision on this attack the trial court correctly eliminated from consideration the charter provisions emanating from Georgia Laws 1915, pp. 480, 493-494, § 23, as to censorship of motion pictures, which were held unconstitutional by this court in *K. Gordon Murray Productions, Inc. v. Floyd*, 217 Ga. 784, supra. It then concluded that the ordinance is not authorized by either the remaining provisions of Georgia Laws 1915, pp. 480, 493-494, § 23, supra, relating to regulation of motion pictures or by

the city's police powers granted by Georgia Laws 1874, pp. 116, 119-120, § 15.

The 1915 act above referred to amended Atlanta's charter by providing a section on the subject of what were then known as moving pictures. It provides as follows: "That the mayor and general council of the city of Atlanta are hereby authorized and empowered and given full authority to regulate by ordinance places where moving pictures are shown, whether alone or in connection with vaudeville or other entertainments, and to establish rules and regulations governing the manner in which such pictures shall be displayed and the means by which pictures are exposed, especially with reference to the possibility of fire or crowding of patrons, exits, and air, and furthermore, governing the matter of pictures displayed and to prevent the display of obscene or licentious pictures or other pictures that may affect the peace, health, morals and good order of said city . . ." Immediately following this quoted portion is that which provided for a board of censorship, prohibited exhibition of pictures without approval by such board, and empowered the board to approve or reject pictures or scenes, which this court recently held in *K. Gordon Murray Productions, Inc. v. Floyd*, 217 Ga. 784, supra, was prior restraint in violation of the freedom of speech guaranty of the Georgia Constitution.

As we construe it, the charter language above quoted was untouched by the ruling in the *Murray* case and empowers this ordinance, particularly the portion which expressly authorizes the city to regulate by ordinance "governing the matter of pictures displayed and to prevent the display of obscene" or other type pictures there described. "Matter" there refers to *content* of pictures. Authority to regulate and govern their content is a broad power which surely includes authority to require, before their showing, review of the pictures for classification in certain categories and the display of any classification except "approved" in the advertising of the picture. With this conclusion it is not necessary to consider the police powers granted to the city by Ga. L. 1874, pp. 116, 119-120, § 15, supra.

It was error to overrule on this ground the defendants' general demurrers to the petitions, and this requires reversal.

In holding that the ordinance in question is within the charter powers of the City of Atlanta, we make no ruling upon any of the attacks challenging the constitutionality of the ordinance, made but not reached and passed upon by the trial court because of its ruling that the ordinance was not authorized by the charter. While it would be desirable, in this one review, to decide all of the questions involved in the case, that is impossible. We are bound by the rule that this court will never pass upon constitutional questions unless it clearly appears in the record that the point was directly and properly made in the court below and distinctly passed upon by the trial judge. See, in this connection, *Brunswick Peninsular Corporation v. Daugharty*, 203 Ga. 454 (47 SE2d 275); *Bentley v. Anderson-McGriff Hardware Co.*, 181 Ga. 813 (184 SE 297). Here, the record shows that the consitutional questions were *specifically not* passed upon.

In view of this ruling subsequent proceedings were nugatory and it is not necessary to pass upon the assignments of error relating to the admission of evidence upon the hearing for interlocutory injunction or the grant of that injunction.

*Judgments reversed. All the Justices concur, except Duckworth, C. J., Head, P. J., and Candler, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. In *K. Gordon Murray Productions, Inc. v. Floyd*, 217 Ga. 784, 787 (2) (125 SE2d 207), this court said: "If the attack upon the portion of the city charter (Ga. L. 1915, p. 480, at pp. 493, 494) which authorizes the city to adopt the censorship ordinance, and upon the ordinance adopted pursuant thereto, which contends that in providing for *examination of all motion pictures* by the censorship board and forbidding the showing of any picture without first obtaining a permit from the city, *thereby imposing a prior restraint of speech* in violation of the First Amendment (*Code* § 1-801), and the Fourteenth Amendment (*Code* § 1-815) of the U. S. Constitution and also *Code Ann.* § 2-115 of the State Constitution (Const. of 1945), . . . the charter provision as well as the ordinance are void, and it was error to dismiss the petition on demurrer." (Italics mine.) Then at page 793 we held: "It follows that the charter and ordinance provision, *requiring inspection of the protected as well as the unprotected pictures, and*

*also requiring a permit from the city authorities before any picture can be exhibited* in the theatre, violate the State Constitution (*Code Ann.* § 2-115) and are void." (Italics mine.) To any reasonable mind this could only mean that charter authorization for an ordinance that imposed a prior restraint on legitimate pictures was unconstitutional and void. The trial court was confronted with a decision of this court, binding upon him, adjudging that the provisions of the charter authorizing such an ordinance were void, and his clear analysis of that opinion shows that he understood it; hence he found before him a charter with such authority completely carved out of it. In this situation, being the learned and experienced lawyer that he is, he ruled —and I maintain correctly so—that there was remaining in the charter when this case was presented nothing, absolutely nothing, to authorize the adoption of this ordinance which unmistakably imposes a prior restraint upon all pictures. Our ruling as quoted above in the *K. Gordon Murray Productions* case effectually, and as a matter of law, erased from the charter all power to provide a prior restraint by ordinance of non-obscene pictures. The trial judge being experienced in the construction of statutes correctly ruled that the remains of the charter did not authorize this ordinance.

But the majority of this court, obviously unfamiliar with the true meaning of what we ruled in that case, and either unacquainted with or unwilling to observe the universal rule of construction which requires that if a statute is susceptible to two constructions, one of which would render it unconstitutional and the other constitutional, it must be given that construction which would render it constitutional rather than unconstitutional, have seized upon and lifted from its context the verbiage of section 23 of the charter (Ga. L. 1915, p. 480, at page 493), "governing the matter of pictures displayed," and ignoring the continuation of the same sentence, which is "and to prevent the display of obscene or licentious pictures or other pictures that may affect the peace, health, morals and good order of said city." Then they assert that the isolated words, the full meaning of which can be known only as they relate to and are qualified by the remainder of the sentence, authorize the adoption of a clearly

invalid and unconstitutional ordinance which is in the teeth of our decision in the *K. Gordon Murray Productions* case which plainly ruled that such prior restraint of non-obscene pictures is violative of the Constitution (*Code Ann.* § 2-115). It is incorrect to say adoption of ordinances "governing the matter of pictures displayed" can be separated from the words that follow, to wit: "to prevent the display of obscene or licentious," etc., pictures. To govern the display of what pictures? To prevent display of obscene or licentious, etc., pictures. The fact is that the referred-to charter provisions are not susceptible of a construction that they authorize doing anything but preventing obscene or licentious, etc., pictures which under *K. Gordon Murray Productions* is perfectly constitutional. But in all events they are susceptible to a construction limiting them to such pictures. Then for argument's sake only, I make the wild assumption that they might be construed to refer to all pictures, and to authorizing the placing by ordinance of a prior restraint on them, which would under the *K. Gordon Murray Productions* case be unconstitutional. The unchallengeable rule of construction demands that they be given the former construction, thus rendering them constitutional. *Smith v. Evans,* 125 Ga. 109, 112 (53 SE 589); *Fordham v. Sikes,* 141 Ga. 469 (81 SE 208); *Bennett v. Wheatley,* 154 Ga. 591 (115 SE 83); *Evans v. Evans,* 190 Ga. 364, 369 (9 SE2d 254); *DeWitt v. Richmond County,* 192 Ga. 770, 773 (16 SE2d 579); *Sumter County v. Allen,* 193 Ga. 171, 174 (17 SE2d 567); *Thomas v. Board of Com'rs of Chattooga County,* 196 Ga. 10, 14 (25 SE2d 647); *Hill v. Busbia,* 217 Ga. 781 (125 SE2d 34).

But the majority, completely ignoring the plain verbiage of the charter as well as the binding rule of construction, have ruled that, despite our former ruling in the *K. Gordon Murray Productions* case, that portions of the charter authorizing prior restraint violate the Constitution, *Code Ann.* § 2-115, and are void, the remains of the charter since that decision operated upon it still authorize this ordinance placing a prior restraint upon all pictures good and bad. By that ruling, which is in my opinion palpably erroneous, they compel the futile return of the case for further ruling on the demurrer, knowing that after

considerable time and expense have been spent, the ordinance will and must ultimately meet the fate it deserves of being declared unconstitutional because it imposes a prior restraint. Such futility is not calculated to increase respect for the courts. I can not conceive of how any true comprehension of the factual case with which we are presented could possibly reach the conclusion of the majority.

I abhor obscene, licentious pictures as much as anyone. The Constitution does not protect them. This court in *K. Gordon Murray Productions, Inc. v. Floyd,* 217 Ga. 784, supra, made it plain that they had no protection and could be severely dealt with. But I am unwilling to destroy or even whittle away one iota of the absolute protection of non-obscene, non-licentious pictures and the protected speech and press embraced in the Constitution. It would seem that a mental review of history stretching across the past centuries, marked with the record of martyrs who suffered cruel punishment and death by burning at the stake, as well as the cross upon which Jesus was crucified, because they exercised the inherent right to speak, would convince everyone of the high purpose and great wisdom of the freedom of speech and press solemnly guaranteed by our Constitution. To deny this protection on the flimsy excuse that it is done to get at the abuses which are not protected is no more sensible than it would be to round up our preachers along with a thief and put them all in jail on the pretense that such foolishness was necessary in order to catch the thief whom all good citizens wanted caught.

Although the judgment under review does not authorize a direct ruling on the constitutional question raised but not passed upon below, it is nevertheless impossible to decide the question as to charter authority for the ordinance, intelligently and fairly, without deciding if the construction placed upon the charter offends the Constitution; and if it will bear a construction that would be constitutional the law demands that it be so construed rather than the construction that renders it unconstitutional. If the array of decisions I have cited leave any doubts that they are the law by which we are bound, I could add other cases to the same effect almost without end. And the constitutional pro-

vision necessary to consider in making that construction is *Code Ann.* § 2-115 (Const. of 1945), and if construed to authorize this ordinance which constitutes a prior restraint of both good and bad pictures, we know that would, under the *K. Gordon Murray Productions* case render it unconstitutional. If construed not to authorize a prior restraint ordinance as to non-obscene pictures it is constitutional. When the relevant charter provision expressly limits the regulation authorized to preventing the exhibition of obscene, licentious and kindred pictures which is constitutional, it should be so accepted; thus affirming the judgment holding that it does not authorize this ordinance which places a prior restraint on all non-objectionable and hence constitutionally protected pictures. The case is that simple, and due respect for the decisions of this court herein cited demands a judgment of affirmance. I am authorized to state that Mr. Justice Candler concurs in this dissent.

HEAD, Presiding Justice, dissenting. The issue in the present case was carefully, fully, and ably considered by the trial judge, as shown by his opinion filed in the cause. Briefly stated, the judge, after an analysis of the opinion of this court in *K. Gordon Murray Productions, Inc. v. Floyd,* 217 Ga. 784 (125 SE2d 207), stated that the question was whether the general welfare clause in the charter of the city and the act approved August 16, 1915 (Ga. L. 1915, pp. 480, 497) contain sufficient authority, after the ruling in the *Murray* case, supra, to authorize the ordinance under attack. The judge determined that such authority did not exist and overruled the general demurrer of the city. I agree with the reasoning of the trial judge and the result reached. I therefore dissent from the opinion of the majority in the present case.